K&L GATES LLP
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552 5000
Facsimile: (310) 552 5001
Seth A. Gold (SBN 163220)
seth.gold@klgates.com
Rebecca Liu (SBN 300870)
rebecca.liu@klgates.com

K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Telephone: (206) 623 7580
Facsimile: (206) 623 7022
Pallavi Mehta Wahi
pallavi.wahi@klgates.com
(*pro hac vice* to be filed)
Aaron Millstein
aaron.millstein@klgates.com
(*pro hac vice* to be filed)

***Attorneys for Plaintiff***
***Starbucks Corporation d/b/a/ Starbucks***
***Coffee Company***

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY, a Washington corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>HITMAN GLASS, a California corporation; JAMES LANDGRAF, an individual residing in Oregon and doing business under the Oregon assumed business name EVOL GLASS; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.        2:16-CV-03937<br><br>**COMPLAINT**<br><br>**(1) FEDERAL TRADEMARK DILUTION**<br>**(2) DILUTION UNDER CAL. BUS. AND PROF. CODE**<br>**(3) FEDERAL COPYRIGHT INFRINGEMENT**<br>**(4) FEDERAL TRADEMARK INFRINGEMENT**<br>**(5) FALSE DESIGNATION OF ORIGIN**<br><br>**DEMAND FOR TRIAL BY JURY** |

**COMPLAINT**

Plaintiffs Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks Corp.") for its Complaint against Hitman Glass, Inc. ("Hitman Glass") and James Landgraf, an individual residing in Oregon and doing business under the assumed business name Evol Glass ("Evol Glass"; together, Hitman Glass and Evol Glass are referred to as "Defendants"), alleges as follows:

## NATURE OF THE CASE AND SUBJECT MATTER JURISDICTION

1.       This is an action for trademark dilution arising under 15 U.S.C. § 1125(c) and Cal. Bus. and Prof. Code § 14247, for copyright infringement arising under 17 U.S.C. § 501(a), for trademark infringement arising under 15 U.S.C. § 1114, and for false designation of origin arising under 15 U.S.C. § 1125(a).  As such, the Court has subject matter jurisdiction over the lawsuit under 28 U.S.C. §§ 1331 and 1338 because the suit arises under 15 U.S.C. § 1121.  The Court also has subject matter jurisdiction over statutory claims pursuant to 28 U.S.C. § 1367(a), as those claims are part of the same case or controversy as the federal claims alleged herein.  As set forth more particularly below, Starbucks Corp. discovered that Defendants have sold and/or facilitated the sale of a number of products that dilute and infringe the federally registered trademarks and infringe the copyrights of Starbucks Corp.:

**Starbucks Siren Logo**   **Defendants' Use**    **Starbucks 40th Anniversary Logo**    **Defendants' Use**

  

Starbucks Corp. attempted to resolve the matter informally, but Hitman Glass and, on information and belief, Evol Glass, have refused to take reasonable steps to halt the further sales of diluting and infringing items and refused to certify that all such sales

have ceased.  As a result, to protect its intellectual property, Starbucks Corp. was left with no choice but to file this suit.

## THE PARTIES

2.      Plaintiff Starbucks Corporation is a corporation organized and existing under the laws of the State of Washington with its principal place of business in Seattle, Washington.  Since 1971, Starbucks Corp., or its predecessor in interest, has continuously conducted business under the trade names "Starbucks," "Starbucks Coffee Company," and "Starbucks Coffee."  Starbucks Corp. is the owner of multiple federally registered trademarks promoting and protecting the Starbucks brand, as well as federally registered copyrights in its logos.

3.      On information and belief, Defendant Hitman Glass is a California corporation with its principal place of business in Gardena, California.  Defendant Hitman Glass is a citizen of California.

4.      On information and belief, Defendant James Landgraf is a resident of Oregon doing business under the assumed business name of Evol Glass, and entering into contracts with Hitman Glass in Gardena relating directly to the sale of the diluting and infringing products referenced herein.

5.      Plaintiff is currently unaware of the identities of defendants Does 1-10 and therefore sues such defendants by fictitious pseudonyms.  Plaintiff is informed and believes, and on that basis alleges, that discovery will reveal the true identities of those defendants and then will amend the Complaint to identify those defendants by name after such discovery.

6.      On information and belief, the actions alleged herein to have been undertaken by defendants were undertaken by each defendant individually, were actions that each defendant caused to occur, were actions that each defendant authorized, controlled, directed, or had the ability to authorize, control, or direct, and/or were actions in which each defendant assisted, participated, or otherwise encouraged, and are actions for which each defendant is liable.  On information and

belief, each defendant aided and abetted the actions of the defendants set forth below; in particular, each defendant had knowledge of those actions and provided assistance and benefitted from those actions, in whole or in part. Each defendant was the agent of the other defendants, and in engaging in the conduct alleged herein, was acting within the course and scope of such agency and with the permission and consent of each and every one of the other defendants.

7.    On information and belief, each defendant is, and at all times mentioned herein was, an alter ego, agent, principal, partner, employee, servant, and/or coconspirator of the other defendants and was acting in the course and scope of his, her, or its agency, retention, and employment with the consent, permission, ratification, and for the benefit of the other defendants, and that as a result, defendants are jointly and severally liable for the acts alleged herein.

**PERSONAL JURISDICTION AND VENUE**

8.    The Court has personal jurisdiction over Hitman Glass because, on information and belief, Hitman Glass resides in, has extensive contacts with, and/or is engaged in substantial and continuous business practices in this judicial district arising from the use in commerce, marketing, advertising, sale, and offering to sell or provide products, clothing, and novelties diluting and infringing the federally protected trademarks and infringing the federally protected copyrights of Starbucks Corp. The Court has personal jurisdiction over Evol Glass because, on information and belief, Evol Glass has specific contacts with, and/or is engaged in business practices in this judicial district arising from the use in commerce, marketing, advertising, sale, and offering to sell or provide the products and novelties diluting and infringing the federally protected trademarks and infringing the federally protected copyrights of Starbucks Corp. Defendants have committed acts of trademark dilution under federal and state law, copyright infringement under federal law, and trademark infringement and false designation of origin under federal law, in this District. Further, Hitman Glass is a California Corporation with its principal place of business in California and

Evol Glass has done business with Hitman Glass in California relating specifically to the acts alleged herein.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to this claim occurred in this District.  On information and belief, Hitman Glass has sold and offered to sell products diluting and infringing on Starbucks Corp.'s trademark rights and infringing Starbucks Corp.'s copyrights in this District, and Evol Glass has assisted with Hitman Glass in connection with its efforts. Each of the above-referenced sales constitutes a separate action independently sufficient for venue.

## FACTUAL ALLEGATIONS

**I.     Allegations Common to All Claims for Relief**

10.     For over 20 years, Starbucks Corp. has continuously used its famous and highly distinctive trademarks, including the famous Siren Logo and, more recently, the 40th Anniversary Siren Logo (shown below, collectively, the "Starbucks Marks"), to identify its goods and services and to promote its brand.  The United States Patent and Trademark Office ("PTO") has granted Starbucks Corp. numerous trademark registrations for the Starbucks Marks.  The Starbucks Marks have been registered in over 180 countries, and, for illustrative purposes, include:





Siren Logo                    40th Anniversary Siren Logo

**COMPLAINT**

11.     These registrations recognize the exclusive rights held by Starbucks Corp. in the Starbucks Marks.

12.     Starbucks Corp., through its own operations and those of its licensees, has consistently used the Starbucks Siren Logo trademark since 1992. The Starbucks Siren Logo consists of a concentric circular design, the exterior region of which is green and white and within which appear the words "Starbucks Coffee" in white block lettering, separated by two white stars. The center portion of the design consists of a black and white drawing of the head and torso of a siren (*i.e.*, a two-tailed female half-fish, half-human) with long flowing hair, adorned by a crown.

13.     For the black and white Starbucks Siren Logo, Starbucks Corp. owns U.S. trademark Registration Numbers 1,542,775 (registration date June 6, 1989) in connection with "[r]estaurant services featuring coffee and espresso beverages and also serving sandwiches and breakfasts"; 1,815,938 (January 11, 1994) in connection with, inter alia, "Non electric coffee makers, insulated cups, reusable non paper coffee filters, non paper coasters, thermal insulated bottles, and housewares; namely, coffee cups, non electric coffee pots not of precious metal, cups, mugs, dishes, trivets, and canisters," "ground and whole bean coffee," and "retail store services featuring [coffee]," and "restaurant and café services"; 2,028,943 (January 7, 1997) in connection with "[t]-shirts, polo shirts, sweatshirts, caps, hats, jackets, [shorts] and aprons"; 2,176,976 (July 28, 1998) in connection with "electrical appliances, namely, espresso makers and coffee makers for domestic and commercial use"; 3,298,945 (September 25, 2007) in connection with, inter alia, "Coffee, . . . prepared coffee and coffee-based beverages; prepared espresso and espresso-based beverages"; 3,673,335 (August 25, 2009) in connection with "[d]airy-based food beverages"; and 1,943,361 (December 26, 1995), 2,120,653 (December 9, 1997), and 3,428,127 (May 13, 2008) in connection with a variety of goods and services. These registrations are valid and subsisting and are incontestable per 15 U.S.C. § 1065. Starbucks Corp. annexes copies of the registration certificates at Exhibit 1.

14.     For the green, black, and white Starbucks Siren Logo, Starbucks Corp. owns U.S. trademark Registration Numbers 1,815,937 (registration date January 11, 1994) in connection with, *inter alia*, "ground and whole bean coffee," "cups, mugs, dishes, trivets, and canisters" and "retail store services featuring [coffee]," and "restaurant and café services"; 2,266,351 (August 3, 1999) in connection with, *inter alia*, "ground and whole bean coffee," "coffee . . . and espresso beverages, and beverages made with a base of coffee and/or espresso"; 2,266,352 (August 3, 1999) in connection with, *inter alia*, "[r]estaurant, cafe and coffee house services"; 2,325,182 (March 7, 2000) in connection with, *inter alia*, "retail outlets . . . featuring ground and whole bean coffee[,] . . . coffee and espresso beverages and beverages made with a base of coffee, espresso, and/or milk;" "coffee cups, tea cups, mugs, glassware, dishes, plates and bowls"; and "toys; books;" . . . and T-shirts, caps, sweatshirts, jackets, aprons and other clothing items"; and 1,893,602 (May 9, 1995) and 3,428,128 (May 13, 2008), in connection with a variety of goods and services.  These registrations are valid and subsisting and are incontestable per 15 U.S.C. § 1065.  Starbucks Corp. annexes copies of the registration certificates at Exhibit 1.

15.     Starbucks Corp. owns United States copyright Reg. No. VA 875-932 at the United States Copyright Office in connection with the Starbucks Siren Logo. Starbucks Corp. annexes a copy of the copyright registration certificate at Exhibit 2.

16.     In January 2011, Starbucks Corp. debuted its 40th Anniversary Siren Logo.  The 40th Anniversary Siren Logo dispenses with the block letters of the STARBUCKS word mark, and consists solely of a rendering of the famous siren. Starbucks Corp., through its own operations and those of its licensees, has consistently used the Starbucks 40th Anniversary Siren Logo trademark since 2011.  Starbucks Corp. has made billions of transactions under the 40th Anniversary Siren Logo in U.S. Starbucks stores since that logo launched in January 2011.

17.     For the black and white 40th Anniversary Siren Logo, Starbucks Corp. owns U.S. trademark Registration Numbers 4,415,862 (registration date October

8, 2013) in connection with a variety of goods and services, including "paper boxes and paper packaging" and "paper cups, non-electric milk frothers; scoops"; 4,538,053 (May 27, 2014), in connection with, *inter alia*, "Hand operated coffee grinders and coffee mills, insulated coffee and beverage cups, non-paper coasters, insulated vacuum bottles, coffee cups, tea cups and mugs, glassware, dishes, plates and bowls, trivets, storage canisters, non-electric drip coffee makers, non-electric plunger-style coffee makers, and decorative storage containers for food, non-electric tea kettles, tea infusers, tea pots, tea strainers, ceramic figurines, porcelain figurines; paper cups and insulated sleeves for beverage cups," "Electrical appliances, namely espresso makers and coffee makers for domestic or commercial use," "milk based beverages," "coffee . . . and espresso beverages, . . . beverages made with a base of coffee and/or espresso," "retail store services in the field of coffee," and "café, . . . coffee bar . . ., carry out restaurant services, . . . coffee supply services for offices," "stationary, posters, paper napkins, paper coasters, paper bag," and "retail store services in the field of . . . clothing, caps and hats, toys . . . and accessories therefor"; computerized on-line ordering services all in the filed of . . . jewelry, clothing, caps, hats, toys . . . and accessories thereof,"; and 4,639,908 (November 18, 2014) in connection with a variety of goods and services, including "[t]-shirts, polo shirts, sweatshirts, caps, hats, jackets, aprons and vests," "[t]oys," and "jewelry."   These registrations are valid and subsisting; Starbucks Corp. annexes copies of the registration certificates and application status pages from the USPTO website at Exhibit 1.

18.     For the green and white 40th Anniversary Siren Logo, Starbucks Corp. owns U.S. trademark Registration Numbers 4,538,585 (registration date May 27, 2014) in connection with, *inter alia*, "paper cups, non-electric milk frothers; scoops"; 4,572,688 (July 22, 2014), in connection with, *inter alia*, "stationary, posters," "insulated coffee and beverage cups, . . . glassware, . . . storage canisters, . . . ceramic figurines, porcelain figurines," "T-shirts, polo shirts, sweatshirts, caps, hats, jackets, shorts," "business administration; business management; franchising," "coffee . . . and

espresso beverages, . . . beverages made with a base of coffee and/or espresso," "retail store services" and "computerized on-line [retail and] ordering services in the field of coffee, . . . jewelry . . . clothing, caps and hats, toys," and "café, . . . coffee bar . . . , and carry out restaurant services, . . . coffee supply services for offices"; and 4,635,864 (November 11, 2014), in connection with a variety of goods and services, including "jewelry," "[t]-shirts, polo shirts, sweatshirts, caps, hats, jackets, aprons and vests," and "toys."   These registrations are valid and subsisting. Starbucks Corp. annexes copies of the registration certificates and application status pages from the USPTO website at Exhibit 1.

19.     Starbucks Corp. owns United States copyright Reg. No. VA 1-768-520 in connection with the 40th Anniversary Siren Logo. Starbucks Corp. annexes a copy of the copyright registration certificate at Exhibit 2. Along with Reg. No. VA 875-932, these copyrights are collectively referred to herein as the "Starbucks Copyrights."

20.     As a trademark owner, Starbucks Corp. has the obligation to enforce against unauthorized uses of its intellectual property to protect itself and consumers.

**II.   <u>Starbucks Corp. History</u>**

21.     Starbucks Corp. is the country's leading purveyor of fine *Arabica* coffee. Beginning in 1971 as a single, Seattle-based dry goods store, Starbucks Corp. has grown to approximately 12,000 retail locations in the United States, and more than 10,000 retail locations in over 65 foreign countries. Starbucks Corp. retail stores serve brewed coffee, espresso-based beverages, teas, blended beverages, soft drinks, and other foods and beverages, and carry packaged coffee, instant coffee, coffee equipment, glassware, mugs, and other Starbucks-branded merchandise.  These stores prominently display the Starbucks Marks.

22.     These stores conducted billions of transactions in 2015. U.S. customers complete more than 14% of those transactions using the Starbucks Card mobile app, or more than 5 million per week. Since at least the year 2000, Starbucks

Corp. has made billions of dollars of sales throughout the United States. Starbucks Corp.'s worldwide and United States success is owed to its strong reputation for its fresh-roasted specialty coffees, brewed coffees, espresso beverages and the other products and services it provides. Starbucks Corp. has a reputation for excellence, particularly in the area of roasted coffees and coffee beverages, and is widely recognized for its knowledgeable staff and superior service.

23.     Aside from its stores, Starbucks Corp. also serves coffee and other beverages in the United States through hundreds of authorized accounts, including bookstores, cruise line ships, hotels, theaters, sport and entertainment venues, airports, airlines, and restaurants.  These accounts display the Starbucks Marks in connection with the Starbucks Corp. coffee and other beverages that they serve.

24.     Starbucks Corp. also markets and sells its products, including glassware and other merchandise, on its website resolving at store.starbucks.com. The website generates over 3 million unique visits every week.  The Starbucks Marks appear on many of the individual web pages and are prominently displayed on merchandise available for sale on the StarbucksStore.com website.

25.     Starbucks Corp. polices and monitors every one of these distribution channels to ensure strict compliance with Starbucks Corp.'s intellectual property policies.

26.     The Starbucks Corp. Facebook page has more than 36 million likes and more than 28 million visits.  The Starbucks Corp. Twitter account has nearly 10 million followers. Both platforms prominently feature the Starbucks Marks.

27.     Numerous television programs and movies have prominently featured the Starbucks Marks, including *Parks & Rec, The Voice, Ellen, Real Time, The Devil Wears Prada, Zoolander, License to Wed, The Proposal, Clueless, 127 Hours, Jurassic World, You've Got Mail, Austin Powers: The Spy Who Shagged Me, Fight Club, The Terminal, Sex and the City, Josie and the Pussy Cats, Miss Congeniality, Clueless, Made of Honor, Meet the Fockers, 13 Going on 30, In Good Company*, and *I Am Sam.*

28.     Brand studies routinely place Starbucks Corp. among the most recognized brands in the world.  In its most recent study, BrandZ ranked Starbucks Corp. as the 29th Most Valuable Brand in the World in between other well-known brands like Nike and Toyota, and ahead of companies such as BMW, Budweiser, and Samsung.

29.     As a result of the foregoing sales and marketing activities, the Starbucks Marks have become famous and highly distinctive trademarks with an unmatched reputation of excellence.

**III.   Defendants' Unlawful Activities Related to Starbucks Corp.'s Intellectual Property**

30.     On information and belief, Hitman Glass is a corporation in California that manufacture, distributes, and has sold glass accessories and related clothing and novelties bearing the Starbucks Marks and the materials protected by the Starbucks Copyrights.  On information and belief, Evol Glass is an assumed business name of defendant James Landgraf, who has partnered with Hitman Glass to manufacture, distribute, and sell glass accessories and related novelties and also has sold glass accessories through additional distribution channels.

31.     In 2015, Starbucks Corp. learned that Hitman Glass was having manufactured, promoting, and selling an entire line of products that was based on Starbucks Corp.'s brand.  Thereafter, Starbucks Corp. learned that Hitman Glass had partnered with Evol Glass to have those products made, promoted, and sold.

32.     Defendants called their line of products the "Dabuccino" line, and included such products as the "Dabuccino" Series One Pipe, "Dabuccino" Series Two Pipe, hat pins, stickers, and t-shirts.

\\
\\
\\
\\

**COMPLAINT**

1    33.    Defendants' products and packaging have been based on products and

2    packaging offered and provided by Starbucks Corp.:

3

| Starbucks Use | Defendants' Use | Starbucks Use | Defendants' Use |

    

| Starbucks Use | Defendants' Use | Starbucks Use | Defendants' Use |

   

In all instances, Defendants' products incorporate almost exactly the Starbucks Marks

and the materials protected by the Starbucks Copyrights.

20    34.    On information and belief, Hitman Glass and Evol Glass products

21    retail pricing ranges in the hundreds of dollars to over $1,000 and, with respect to at

22    least one product, approximately $8,000.

23    35.    On information and belief, Evol Glass has also manufactured and sold

24    the "Dabuccino" line of products it created with Hitman for sale through distribution

25    channels outside of Hitman Glass.  On information and belief, Evol Glass also has sold

26    products in addition to the Dabuccino line of products, which additional products

27    incorporate the Starbucks Marks and the materials protected by the Starbucks

28    Copyrights.

**COMPLAINT**

1    36.    Neither Hitman Glass nor Evol Glass is licensed or authorized to use

2    the Starbucks Marks and Copyrights depicted or described above.

3    37.    Neither Hitman Glass nor Evol Glass has ever sought or received

4    permission from Starbucks Corp. to use any Starbucks Corp. intellectual property,

5    including but not limited to the Starbucks Marks or the materials protected by the

6    Starbucks Copyrights.

7    38.    On information and belief, Hitman Glass and Evol Glass intended to

8    copy the Starbucks Marks and the materials protected by the Starbucks Copyrights to

9    capitalize on the success and popularity of that intellectual property.  Hitman Glass

10   described its Dabuccino Series One by stating, "Taking inspiration from one of

11   America's favorite frozen coffee drinks, this cup is hugely popular with most people

12   and easily relatable."  On information and belief, Hitman Glass was aware that the

13   public associated its product with Starbucks Corp., because Hitman Glass made public

14   statements about the similarity between its products and the Starbucks Marks.  On

15   information and belief, Defendants were aware that the public associated their products

16   with Starbucks Corp. and/or its goods because numerous consumers commented

17   through various social media outlets on the connection between Defendants and/or

18   their products and Starbucks Corp.

19   39.    On information and belief, Hitman Glass and Evol Glass corroborate

20   their knowledge of and intent to trade off the goodwill of, and create a direct

21   association with, the Starbucks Marks by using the Starbucks Marks on "Certificate[s]

22   of Authenticity" that they provide to consumers with respect to at least certain of their

23   products that incorporate the Starbucks Marks and the materials protected by the

24   Starbucks Copyrights.  A copy of a sample Certificate of Authenticity is attached as

25   Exhibit 3.

26   40.    Starbucks Corp. sought to resolve this matter informally by contacting

27   Hitman Glass, and attempting to contact Evol Glass, and setting forth its objection to

28   the manufacturing, promotion, and sale of such products on the basis that such conduct

1  gives rise to trademark dilution and infringement and copyright infringement, among
2  other things.  Starbucks Corp. requested, among other things, that Defendants take
3  steps to ensure that the products from its Dabuccino and other product lines are no
4  longer offered for sale, including through third parties, and to certify that all sales have
5  ceased.  Hitman Glass refused to accede to Starbucks Corp.'s reasonable demands.
6  Starbucks Corp. attempted to make these demands directly to Evol Glass but was
7  unable to directly contact Evol Glass.  Even after Starbucks Corp. made that request of
8  Hitman Glass, Starbucks Corp. found numerous retailers offering the infringing
9  Dabuccino products.

10      41.      Defendants' activities have been done and continue to be done
11  willfully, with full knowledge that such conduct violates federal law.

**FIRST CLAIM FOR RELIEF**

**(Federal Trademark Dilution under 15 U.S.C. § 1125(c))**

**(Against Hitman Glass, Evol Glass, and DOES 1-10)**

15      42.      Starbucks Corp. repeats and realleges the allegations in preceding
16  paragraphs 1-41 as if fully set forth herein.

17      43.      Starbucks Corp. owns all of the rights, interest, and goodwill in the
18  registered Starbucks Marks.

19      44.      The Starbucks Marks are famous and highly recognized by the
20  general consuming public.  The Starbucks Marks, or variations thereof, have been in
21  use for over 40 years and have a global geographic reach of advertising and publicity
22  through its tens of thousands of stores in the United States and in foreign countries,
23  and as illustrated by the Brandz study, which lists Starbucks Corp. as the 29th Most
24  Valuable Brand in the World.  Starbucks Corp. uses the Starbucks Marks in its retail
25  stores, which serve brewed coffee, espresso-based beverages, teas, blended beverages,
26  soft drinks, and other foods and beverages, and carry packaged coffee, instant coffee,
27  coffee equipment, mugs, and other Starbucks-branded merchandise.  The Starbucks
28  Marks are also used in Starbucks Corp.'s advertising of its products and services.  To

1   further illustrate the fame and success of the Starbucks Marks, since at least 2000,

2   Starbucks Corp.'s United States revenues have been in the billions of dollars.

3   Starbucks Corp. also has more than 11 million active members in its loyalty program.

4   The fame of the Starbucks Marks is also established by the facts alleged above,

5   including in paragraphs 21 through 29, which detail Starbucks Corp.'s history and

6   success.

7        45.     The Starbucks Marks were famous and highly recognized by the

8   general consuming public before Defendants' actions complained of herein.

9        46.     As illustrated above, Defendants' use is nearly identical to the

10   Starbucks Marks.

11        47.     The Starbucks Marks are distinctive.

12        48.     Defendants willfully intended to create an association with the

13   Starbucks Marks and to capitalize upon the success and popularity of the Starbucks

14   Marks to sell Defendants' products, as alleged above and herein.

15        49.     The public has actually associated Defendants' use of the products

16   with the Starbucks Marks, noting the similarity between the two products, as alleged

17   above and herein.

18        50.     Defendants' use of the Starbucks Marks has been a commercial use to

19   sell glass accessories, including glass pipes, and other merchandise, including hat pins,

20   t-shirts, and other novelties.  Defendants have used the Starbucks Marks as if they

21   were their own.

22        51.     Defendants' actions and inaction, as described above, dilute and are

23   likely to continue to dilute the Starbucks Marks by blurring and by diminishing the

24   distinctive quality of those marks.

25        52.     Starbucks Corp. has no adequate remedy at law.

26        53.     Defendants have caused dilution by blurring of the Starbucks Marks

27   and willfully intended to trade on the recognition of the Starbucks Marks.  This case is

28

**COMPLAINT**

an exceptional case under 15 U.S.C. § 1117(a), including because of Defendants' knowing, willful, and bad faith dilution of the Starbucks Marks.

54.     Defendants' trademark dilution has caused and will continue to cause irreparable injury and damage to Starbucks Corp.'s business, reputation, and goodwill in an amount to be determined at trial.  Unless restrained, Defendants' conduct will continue to seriously and irreparably impair further the value of the Starbucks Marks, for which there is no adequate remedy at law.

55.     In light of the foregoing, Starbucks Corp. is entitled to damages for the recovery of Defendants' profits and damages sustained by Starbucks Corp. in an amount to be determined at trial, including attorneys' fees, that Starbucks Corp. has sustained and will sustain as a result thereof, as well as trebling of damages pursuant to 15 U.S.C. §§ 1117(a) and 1125(c)(5).  Starbucks Corp. is also entitled to injunctive relief prohibiting Defendants' use of the Starbucks Mark as authorized by 15 U.S.C. § 1125(c), and an order requiring the destruction of any dilutive or infringing articles pursuant to 15 U.S.C. § 1118.

## SECOND CLAIM FOR RELIEF

### (Dilution under Cal. Bus. and Prof. Code § 14247)

### (Against Hitman Glass, Evol Glass, and DOES 1-10)

56.     Starbucks Corp. repeats and realleges the allegations in preceding paragraphs 1-55 as if fully set forth herein.

57.     Starbucks Corp. owns all of the rights, interest, and goodwill in the registered Starbucks Marks.

58.     The Starbucks Marks are famous and highly recognized by the general consuming public as established by the facts alleged above, including in paragraphs 21 through 29, which detail Starbucks Corp.'s history and success.

59.     The Starbucks Marks were famous and highly recognized by the general consuming public before Defendants' actions complained of herein.

60.     As illustrated above, Defendants' use is nearly identical to the Starbucks Marks.

61.     The Starbucks Marks are distinctive.

62.     Defendants willfully intended to create an association with the Starbucks Marks and to capitalize upon the success and popularity of the Starbucks Marks to sell Defendants' products, as alleged above and herein.

63.     The public has actually associated Defendants' use of the product with the Starbucks Marks, noting the similarity between the two products, as alleged above and herein.

64.     Defendants' use of the Starbucks Marks has been a commercial use to sell glass accessories, including glass pipes, and other merchandise, including hat pins, t-shirts, and other novelties.  Defendants have used the Starbucks Marks as if they were their own.

65.     Starbucks Corp. has no adequate remedy at law.

66.     In light of the foregoing, Starbucks Corp. is entitled to injunctive relief prohibiting Defendants from using the Starbucks Marks, or any mark dilutive thereof, in the State of California because the Starbucks Marks are famous throughout the entire State.  Starbucks Corp. is further entitled to recover from Defendants up to three times their profits and up to three times all damages suffered by Defendants' dilution, in an amount to be determined at trial, pursuant to California Business and Professions Code § 14247(b) & 14250(a).

## THIRD CLAIM FOR RELIEF

### (Federal Copyright Infringement under 17 U.S.C. § 501)

### (Against Hitman Glass, Evol Glass, and DOES 1-10)

67.     Starbucks Corp. repeats and realleges the allegations in preceding paragraphs 1-66 as if fully set forth herein.

68.     At all relevant times, Starbucks Corp. has owned all relevant copyrights.  Starbucks Corp. enjoys exclusive rights with respect to the Starbucks

Copyrights, including the exclusive right to reproduce, distribute, display, and create derivative works based on the same.

69.     Defendants are not authorized to reproduce, publish, distribute copies of, display, or prepare derivative works based on all or any portion of materials protected by the Starbucks Copyrights.  Defendants have used the Starbucks Copyrights in the manufacturing, promoting, and selling of glass accessories, including glass pipes, and other merchandise, including hat pins, t-shirts, and other novelties, and to advertise the same.  As illustrated above, Defendants' designs are virtually identical to the materials protected by the Starbucks Copyrights.

70.     Defendants' unauthorized copying, reproducing, displaying, and use of the materials protected by the Starbucks Copyrights without consent or authorization on its variety of goods constitutes copyright infringement pursuant to 17 U.S.C. § 101 *et seq.* because Defendants' goods incorporate copies of the Starbucks Corp. copyrighted works and/or derivative works. Moreover, Defendants' works are strikingly and/or substantially similar to the materials protected by the Starbucks Copyrights.

71.     Defendants had access to the materials protected by the Starbucks Copyrights and Defendants' copying is intentional, as illustrated by among other things its statement that it was "[t]aking inspiration from one of America's favorite frozen coffee drinks . . . ."

72.     Defendants' copyright infringement has caused Starbucks Corp. immediate and irreparable harm and has been willful. Starbucks Corp. has no adequate remedy at law.

73.     In light of the foregoing, Starbucks Corp. is entitled to injunctive relief prohibiting Defendants from using the materials protected by the Starbucks Copyrights, or any derivative thereof, in connection with the glass accessories, including glass pipes, and other merchandise, such as hat pins, t-shirts, and other novelties, to advertise the same as authorized by 17 U.S.C. § 502.  Starbucks Corp. is

**COMPLAINT**

further entitled to recover from Defendants actual damages, plus the amount of Defendants' profits attributable to the infringement, 17 U.S.C. § 504(b), or in the alternative, Defendants pay to Starbucks Corp. statutory damages, as authorized by 17 U.S.C. § 504(c). Starbucks Corp. is entitled to have all of Defendants' print and electronic copies of the materials protected by the Starbucks Copyrights or their unlawful derivatives be impounded as authorized by 17 U.S.C. § 503.

### FOURTH CLAIM FOR RELIEF

### (Federal Trademark Infringement under 15 U.S.C. § 1114)

### (Against Hitman Glass, Evol Glass, and DOES 1-10)

74. Starbucks Corp. repeats and realleges the allegations in preceding paragraphs 1-73 as if fully set forth herein.

75. Starbucks Corp. owns all rights, interest, and goodwill in the registered Starbucks Marks, including the pertinent Registration Numbers 2,325,182; 4,538,053; 4,572,688; 4,639,908; and 4,635,864, which include registrations for use on clothing, such as t-shirts, and jewelry, such as pins. Defendants' conduct alleged herein, past and present, including their promotion and sale t-shirts and hat pins, and other merchandise, as well as their use of Certificates of Authenticity, using the Starbucks Marks, constitutes use of a colorable imitation of the federally registered Starbucks Corp. marks in connection with the advertising or sale of goods and/or services in commerce. This conduct has created a likelihood of confusion, and/or deception as to the affiliation, connection, or association of Defendants with Starbucks Corp., or as to the origin, sponsorship, or approval of Defendants' products by Starbucks Corp. Defendants' conduct is likely to induce consumers to believe, contrary to fact, that its products are sponsored, endorsed, approved by, or connected with those of Starbucks Corp.

76. Defendants' conduct has been without the permission or authority of Starbucks Corp. Upon learning of Defendants' use of the Starbucks Marks, Starbucks Corp. specifically objected to Defendants' use.

77.     Defendants' conduct alleged herein including the continuing of allowing the offering for sale and promotion of t-shirts, hat pins, and other novelties, and on Certificates of Authenticity, in interstate commerce using trademarks that are substantially and confusingly similar and/or identical to the Starbucks Marks, without consent or authorization of Starbucks Corp., is likely to cause confusion, to cause mistake, or to deceive consumers and/or to cause post-sale confusion by non-purchasers, and constitutes infringement of Starbucks Corp.'s trademark rights in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.  Upon information and belief, Defendants have profited from this infringement and have declined to take steps to stop such infringement.

78.     Upon information and belief, Defendants were aware of the Starbucks Marks and Defendants committed infringement in willful, flagrant disregard of Starbucks Corp.'s lawful rights by using the Starbucks Marks to advertise, sell, and/or distribute its t-shirts and hat pins, and similar other novelties, and Certificates of Authenticity.  Defendants' conduct has been committed with the intent and purpose of appropriating and trading upon the goodwill and reputation associated with the registered Starbucks Marks.

79.     This is an exceptional case under 15 U.S.C. § 1117(a), particularly because Defendants knowingly, willfully, and in bad faith infringed the Starbucks Marks and have demonstrated a specific intent to infringe the Starbucks Marks.

80.     Defendants' trademark infringement has caused and will continue to cause immediate and irreparable injury and damage to Starbucks Corp.'s business, reputation, and goodwill in an amount to be determined at trial.  Unless restrained, Defendants' conduct will continue to seriously and irreparably impair further the value of the Starbucks Marks, for which there is no adequate remedy at law.

81.     In light of the foregoing, Starbucks Corp. is entitled to injunctive relief prohibiting Defendants from using the Starbucks Marks in connection with hat pins or t-shirts, and similar novelty products, and on Certificates of Authenticity, and

to recover from Defendants all damages, including attorneys' fees, that Starbucks Corp. has sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant trebling pursuant to 15 U.S.C. § 1117, as well as the costs of this action.

## FIFTH CLAIM FOR RELIEF

### (False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A))

### (Against Hitman Glass, Evol Glass, and DOES 1-10)

82.      Starbucks Corp. repeats and realleges the allegations in preceding paragraphs 1-81 as if fully set forth herein.

83.      Starbucks Corp. owns all rights, interest, and goodwill in the Starbucks Marks and any Starbucks Corp. common law trademarks in the United States.   Defendants' sale of t-shirts, hat pins, and other novelties, and use on Certificates of Authenticity, under marks almost identical to the Starbucks Marks and/or any Starbucks Corp. common law trademarks, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Starbucks Corp., or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Starbucks Corp.

84.      On information and believe, Defendants engaged in such acts with the intent to deceive, mislead, and/or confuse relevant consumers with respect to whether there is or was an affiliation, connection, or association of Defendants with Starbucks Corp., or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Starbucks Corp.

85.      On information and belief, Defendants' conduct alleged herein actually deceived and/or has the tendency to deceive a substantive number of actual and potential customers.

86.      As a result of Defendants' acts alleged herein, including the use of the Starbucks Marks, Starbucks Corp. has suffered and will continue to suffer damage, including damages to its reputation and good will.

87.     This is an exceptional case under 15 U.S.C. § 1117(a), particularly because Defendants knowingly, willfully, and in bad faith used the Starbucks Marks without approval and used the goodwill earned by the Starbucks Marks and, thus, have demonstrated a specific intent to infringe the Starbucks Marks.

88.     In light of the foregoing, Starbucks Corp. is entitled to injunctive relief prohibiting Defendants from using the Starbucks Marks, or any mark confusingly similar to the Starbucks Marks in connection with hat pins, t-shirts, and other novelties, as well as on Certificates of Authenticity, and to recover from Defendants all damages, including attorneys' fees, that Starbucks Corp. has sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant trebling pursuant to 15 U.S.C. § 1117, as well as the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Starbucks Corp. respectfully requests that judgment be entered in its favor and against Defendants and that the Court grants the following relief:

1.     For judgment that Starbucks Corp.'s federally registered trademarks have been diluted and infringed and federally registered copyrighted works have been infringed by Defendants;

2.     Pursuant to 15 U.S.C. § 1116, preliminary and permanent injunctive relief against Defendants and those persons or companies in active concert or participation with Defendants, including their officers, agents, servants, employees, attorneys, and representatives from making, using, selling, offering to sell, importing into these United States, displaying, advertising any product or service bearing or utilizing in any way the Starbucks Marks, including but not limited to (i) using any of the Starbucks Corp. registered and common law trademarks in any way that dilutes or is likely to dilute any of the Starbucks Marks; (ii) using any of Starbucks Corp.'s registered and common law trademarks including the Starbucks Marks in connection

with the operation of Defendants' businesses, promotional offers, advertising, marketing, or on Defendants' products; (iii) using any trademark, logo, words, or design that tends to falsely represent or is likely to confuse, mislead, or deceive consumers, purchasers, Defendants' customers, prospective customers or any member of the public that Defendants' promotions, advertisements, products, or services originate from Starbucks Corp. or have been sponsored, approved, or licensed by, or are otherwise associated with Starbucks Corp. or are in any way connected or affiliated with Starbucks Corp.; and (iv) selling or distributing any of the merchandise in the Dabuccino product line;

3. Pursuant to 17 U.S.C. § 502, preliminary and permanent injunctive relief against Defendants and those persons or companies in active concert or participation with Defendants, including their officers, agents, servants, employees, attorneys, and representatives from reproducing, making derivative works of, distributing, or displaying the materials protected by the Starbucks Copyrights or any substantially similar materials including those materials comprising the Dabuccino product line;

4. Defendants be ordered, pursuant to 15 U.S.C. § 1116, to file with the Court and to serve on counsel for Starbucks Corp., within ten (10) days after entry of the judgment herein, a written report under oath setting forth in detail the manner in which they have complied with the injunction ordered by the Court including a full accounting that identifies Defendants' distributor(s), reseller(s), account(s), and others to whom they have purchased or sold equipment, marketing materials, or other goods bearing the Starbucks Marks, including products in the Dabuccino line;

5. Defendants be ordered, pursuant to 15 U.S.C. § 1118, to deliver up to the Court for destruction or other disposition all labels, signs, prints, packaging, wrappers, receptacles, and advertisements and promotional materials infringing or diluting the Starbucks Marks, and all promotional materials, stickers and other means of making the same, including products in the Dabuccino line;

6.      Defendants be ordered, jointly and severally, pursuant to 15 U.S.C. § 1117(a), to pay to Starbucks Corp. all damages and all of their profits from the sale of the products diluting or infringing the Starbucks Marks, or products that falsely designate their origin, including products in the Dabuccino line, that such damages and profits be enhanced on the basis of their willful infringement of the federally registered Starbucks Marks;

7.      Defendants be ordered, jointly and severally, to pay to Starbucks Corp. its attorneys' fees and the costs and expenses of this action pursuant to 15 U.S.C. § 1117(a), and for trebling of damages pursuant to 15 U.S.C. §§ 1117(a) and 1125(c)(5);

8.      Defendants be ordered, jointly and severally, to pay Starbucks Corp. actual damages, plus the amount of Defendants' profits attributable to the infringement, 17 U.S.C. § 504(b), or in the alternative, to pay to Starbucks Corp. statutory damages, as authorized by 17 U.S.C. § 504(c);

9.      Defendants deliver to be impounded during this suit all print and electronic copies of the materials protected by the Starbucks Copyrights or their unlawful derivatives in Defendants' possession or control as authorized by 17 U.S.C. § 503;

10.     Defendants be ordered, jointly and severally, to pay Starbucks Corp., as the prevailing party, reasonable attorneys' fees, costs, and expenses pursuant to 17 U.S.C. § 505;

11.     Pursuant to California Business and Professions Code § 14247(b), injunctive relief prohibiting Defendants from using the Starbucks Marks, or any mark dilutive thereof, in the State of California, and be ordered, jointly and severally, to pay Starbucks Corp., as the prevailing party, up to three times Defendants' profits and up to three times all damages suffered by Defendants' dilution, in an amount to be determined at trial, pursuant to California Business and Professions Code § 14247(b) & 14250(a);

1     12.     Pre-judgment interest at the legally allowable rate on all amounts

2  owed; and

3     13.     Starbucks Corp. be awarded such further relief as this Court may

4  deem just and proper.

5

6                              K&L GATES LLP

7

8  Dated:  June 3, 2016              By:  /s/ Seth A. Gold

9                                        Seth A. Gold
                                         Rebecca Liu
10                                       Pallavi M. Wahi(*pro hac vice* to be
                                         filed)
11                                       Aaron E. Millstein (*pro hac vice* to be
                                         filed)
12

13                                       ***Attorneys for Starbucks Corp.***

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff Starbucks Corp. hereby demands a jury trial for all issues triable by a jury.


K&L GATES LLP


Dated:  June 3, 2016                    By:  /s/ Seth A. Gold
                                               Seth A. Gold
                                               Rebecca Liu
                                               Pallavi M. Wahi(*pro hac vice* to be filed)
                                               Aaron E. Millstein (*pro hac vice* to be filed)


***Attorneys for Starbucks Corp.***

**COMPLAINT**