O

# United States District Court
# Central District of California

| | |
|---|---|
| STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY, a Washington corporation<br><br>                    Plaintiff,<br><br>        v.<br><br>HITMAN GLASS, a California corporation; JAMES LANDGRAF, an individual residing in Oregon; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 2:16-CV-03937-ODW(PJW)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT [34]** |

## I.   INTRODUCTION

Plaintiff Starbucks Corporation ("Starbucks") moves for entry of default judgment against Defendant James Landgraf ("Landgraf") on Starbucks' claims for trademark dilution, copyright infringement, trademark infringement, and false designation of origin.   For the reasons discussed below, the Court **GRANTS** Starbucks' Motion.  (ECF No. 34.) [1]

## II.   FACTUAL BACKGROUND

Starbucks   is   the   country's   leading   purveyor   of   *Arabica*   coffee,   with

---

[1]  After considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

approximately 12,000 retail locations in the United States and more than 10,000 locations abroad.  (Compl. ¶ 21, ECF No. 1.)  Starbucks produces billions of dollars in revenue every year through its stores, authorized accounts, website, and more.  (*Id*. ¶¶ 22–25.)

For over 20 years, Starbucks has continuously used its trademarks, including its Siren Logo and its 40th Anniversary Siren Logo (collectively, "Starbucks' Marks"), to identify its goods and promote its brand.  (*Id*. ¶ 10.)  Starbucks' Marks are prominently displayed in its stores and on its products, which include coffee, coffee equipment, glassware, and many other types of branded merchandise.  (*Id*. ¶ 21, 23, 24.)  Starbucks owns registered trademarks for its Siren Logo in both a black and white color-scheme, and a green, black, and white color-scheme, and has used the two color-schemes since 1989 and 1994, respectively.  (*Id*. ¶¶ 13–14, Ex. 1.)  Starbucks also owns registered trademarks for its 40th Anniversary Siren Logo in a black and white color-scheme and a green and white color-scheme, and has used the two color-schemes since 2011.  (*Id*. ¶¶ 17–18, Ex. 1.)  Starbucks alleges that Landgraf infringed upon its Marks by using virtually identical logos on glass bongs, clothing, and novelties in his "Dabuccino" line of products.  (*Id*. ¶ 30–39.)

On June 3, 2016, Starbucks filed a Complaint against Defendants Hitman Glass and James Landgraf.  (ECF No. 1.)  Landgraf never filed an answer and the Clerk of Court entered default on August 31, 2016.  (ECF No. 26.)  Starbucks' motion for default judgment is now before the Court for decision.  (ECF No. 34.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment after the Clerk of Court enters default.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Upon the Clerk's entry of default, the defendant's liability is conclusively established, and the well-pled factual allegations in the complaint are accepted as true.  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560

(9th Cir. 1977)).

In exercising its discretion to enter a default judgment, a court considers several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

# IV.   DISCUSSION

## A.   Procedural Requirements

Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1.  Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party the default was entered; (2) the pleading to which the default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice if required.  *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Starbucks has fulfilled these requirements.  Starbucks' counsel Seth A. Gold submitted a declaration establishing that: (1) a default was entered by the Clerk against Landgraf on August 31, 2016; and (2) Landgraf is not a minor, incompetent person, or active service member.  (Gold Decl. ¶¶ 6, 8, ECF No. 34.)  Starbucks served Landgraf with notice of this action on August 1, 2016 pursuant to Rule 55(b)(2).  (*Id.* ¶ 2; *see* Proof of Service, ECF No. 19.)  Lastly, Starbucks has complied with Federal Rule of Civil Procedure 54(c) by requesting remedies not different in kind from those prayed for in the Complaint.  (Mot. at 18–25.)  Thus, the Court finds that Starbucks has satisfied the procedural prerequisites for the entry of a default judgment.

**B.    *Eitel* Factors**

The Court finds that the *Eitel* factors weigh in favor of entering a default judgment against Landgraf.  The Court discusses each factor in turn.

**1.    Starbucks Would Suffer Prejudice**

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered.  *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  The Court finds that this factor favors entering a default judgment because Landgraf failed to appear or offer a defense in this case.  Therefore, the only way Starbucks can obtain relief is through a default judgment.

**2.    Starbucks Brought a Meritorious Claim and Starbucks' Complaint Was Sufficiently Pled**

The second and third factors, examining the merits of a plaintiff's substantive claims and the sufficiency of its Complaint, require a plaintiff to "state a claim upon which [it] may recover."  *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

a.    Federal and State Dilution Claims

Starbucks brings both a federal trademark dilution claim under the Lanham Act and a state trademark dilution claim under the California Business and Professions Code against Landgraf.  15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14247.  The analysis under both statutes is the same.  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).  To establish either a federal or California dilution claim, a plaintiff must show that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment."  *Id.*; 15 U.S.C. § 1125(c)(1).

To determine whether a mark is famous and distinctive, courts take into account several factors, including (i) the duration, extent, and geographic reach of advertising and publicity related the mark; (ii) the amount, volume, and geographic extent of sales

of goods or services offered under the mark, (iii) the actual extent of the mark's recognition; and (iv) whether the mark was registered. 15 U.S.C. § 1125(c)(2)(A).

Starbucks' Marks are well known to the public. Both the Siren Logo and the 40th Anniversary Siren Logo have been used worldwide in Starbucks' approximately 22,000 retail locations: the Siren Logo for more than twenty years and the 40th Anniversary Logo for five. (Compl ¶¶ 12, 16, 21.) Billions of transactions are completed every year involving products that bear Starbucks' Marks. (*Id.* ¶ 22.) In the United States, Starbucks has fifteen trademark registrations for the Siren Mark and six trademark registrations for the 40th Anniversary Siren Mark. (*Id.* ¶¶ 13–14, 15, 17–18, 19, Ex. 1, Ex. 2.) Thus, Starbucks' Marks are unmistakably famous.

It is also clear that Landgraf has been using Starbucks' Marks to sell his products. In conjunction with co-defendant Hitman Glass, Landgraf sold Dabuccino glass bongs, hat pins, stickers and t-shirts bearing logos substantially similar to Starbucks' Marks for prices up to $8,000. (*Id.* ¶ 34.) Further, Landgraf also sold the Dabuccino products outside of his dealings with Hitman Glass. (*Id.* ¶ 35.) Thus, the second element is satisfied.

The third element is satisfied as well. Sales of the infringing products began in 2015, long after Starbucks' Marks became famous. (*Id.* ¶ 31, 45.) Indeed, the Dabuccino products were expressly inspired by the fame and relatability of Starbucks' Marks. (*Id.* ¶ 38.)

Finally, Landgraf's use of Starbucks' Marks is likely to cause dilution by blurring. Where a plaintiff's claim is based on a dilution by blurring theory, the question is whether the "association arising from the similarity between a mark or trade name and a famous mark . . . impairs the distinctiveness of the famous mark." 15 U.S.C § 1125(c)(2)(B). Courts may consider all relevant factors in making this determination, including (i) the degree of similarity between the mark or trade name and the famous mark; (ii) the degree of inherent or acquired distinctiveness of the famous mark; (iii) the extent to which the owner of the famous mark is engaging in

substantially exclusive use of the mark; (iv) the degree of recognition of the famous mark; (v) whether the user of the mark or trade name intended to create an association with the famous mark; (vi) any actual association between the mark or trade name and the famous mark.  *Id.*

First, Starbucks has shown that Landgraf's products bear logos substantially similar to Starbucks' Marks through its inclusion of side-by-side images in the pending motion.  (Compl. ¶ 33.)  Second, Starbucks' Marks are inherently distinctive and arbitrary because they use artistic Siren designs to sell coffee.[2]  (*Id.* ¶ 47.); *see Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1033 (9th Cir. 2010).  Third, Starbucks seeks to ensure exclusive use of its Marks through its registrations of the Marks and its monitoring of all of its distribution channels to ensure compliance with its intellectual property policies.  (Compl. ¶ 25.)  Fourth, Starbucks' Marks have a high degree of recognition; the specific Marks at issue have been used throughout the world for years in its stores, on its products, and in its advertising.  (*Id.* ¶ 21–29, 44.)  Fifth, it is clear from public statements by Hitman Glass and Landgraf that they intended to create an association with the famous mark.  For example, the Dabuccino Series One bong is advertised as "[t]aking inspiration from one of America's favorite frozen coffee drinks" and "easily relatable."  (*Id.* ¶ 38.)  The social media response from consumers also shows that an association has been created between the Dabuccino products and Starbucks' products that bear Starbucks' Marks.  (*Id.*)  Given that the first five factors plainly show that Landgraf's infringing use of Starbucks' Marks is likely to cause dilution, the Court finds that Starbucks' federal and state dilution claims are meritorious and sufficiently pled.

---

[2] "A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers.  The less obvious the connection, the stronger the mark, and vice versa . . . . [A]rbitrary marks [are] actual words [or symbols] with no connection to the product—such as Apple computers and Camel cigarettes." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1033 (9th Cir. 2010).  Here, Starbucks' Marks are arbitrary because the Siren depicted in the Marks has no connection to coffee-based products.

b.    Copyright Infringement Claim

Starbucks has also sufficiently pled a meritorious copyright infringement claim against Landgraf.   In order to state a claim for copyright infringement under the Copyright Act, Starbucks must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); 17 U.S.C. § 501.  However, given that "direct evidence" of copying is usually unavailable, a plaintiff may satisfy the second prong by showing "that the infringer had access to the work and that the two works are substantially similar."  *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990).  Starbucks has satisfied both prongs of the test here.

First, Starbucks owns valid copyrights in both the Siren Logo and 40th Anniversary Siren Logo.  Starbucks owns United States copyright Reg. No. VA 875-932 in connection with the Siren Logo and copyright Reg. No. VA 1-768-520 in connection with the 40th Anniversary Siren Logo.  (Compl. ¶¶ 15, 19.)  Starbucks attached copies of the registration certificates to its Complaint.  (ECF No. 1)  Thus, the first prong of the test is satisfied.

Second, Starbucks has shown that Landgraf copied protected elements of its Marks.  Most importantly, Starbucks included this side-by-side comparison of its Marks and the infringing Dabuccino products in its Complaint, displaying how Landgraf's designs are substantially similar to Starbucks' Marks.

///

///

///

///

///

///

///

///

*Starbucks Use*     *Defendants' Use*     *Starbucks Use*     *Defendants' Use*






*Starbucks Use*     *Defendants' Use*     *Starbucks Use*     *Defendants' Use*





(Compl. ¶ 33).   The Court therefore finds that Starbucks has sufficiently pled a meritorious copyright infringement claim.

      c.    <u>Trademark Infringement and False Designation of Origin Claims</u>

    Finally, the Court finds that Starbucks has sufficiently pled meritorious claims for trademark infringement and false designation of origin.  To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must establish that it "owns a valid, legally protectable trademark and . . . Defendants have used the trademark or a mark similar to the trademark without Plaintiff's consent in a manner that is likely to cause confusion among ordinary consumers."  *Sream, Inc. v. Elgawly*, No. CV 16-840-R, 2016 WL 4967710, at *1 (C.D. Cal. Sept. 14, 2016); 15 U.S.C. § 1114(1).

    Starbucks easily satisfies the first element, as it owns registered trademarks for both the Siren Logo and the 40th Anniversary Siren Logo.  (Compl. ¶¶ 13–14, 17–18, Ex. 1.)  Thus, the critical determination is whether Landgraf's use of Starbucks' Marks has created a likelihood that the consuming public will be confused as to who makes what product.  *Jada Toys*, 518 F.3d at 632.  Courts generally weigh eight

factors (the *"Sleekcraft* Factors") in determining whether a likelihood of confusion exists: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–349 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). These factors are "'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic*, 618 F.3d at 1030. A plaintiff "need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).

Here, the Court finds that Starbucks has satisfied the *Sleekcraft* Factors. First, Starbucks' Marks are famous and inherently distinctive (as analyzed above). Thus, this factor weighs heavily in Starbucks' favor. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) ("Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness"). Second, the proximity of the parties' goods and services weighs in favor of Starbucks, as Landgraf has used the nearly identical Dabuccino logos on t-shirts and pins, product types which Starbucks' trademark registrations protect. (Compl. ¶ 14, 17, 18, 33, 75.) Third, as analyzed above, Landgraf's Dabuccino logos are virtually identical to Starbucks' Marks. (*Id.* ¶ 33.)

Fourth, consumers have already associated Starbucks' Marks and Landgraf's infringing logos, as evidenced by the social media user comments excerpted in the pending motion. (*Id.* ¶ 38-39.) Evidence "of actual confusion is not necessary to finding a likelihood of confusion." *Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prod.*, No. SA CV 16–0969–DOC (JEMx), 2016 WL 3545524, at *5 (C.D. Cal. June 28, 2016). Rather, a "likelihood of confusion 'will be found whenever consumers are

likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks.'" *Id.* (citing *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15–08157–BRO (EX), 2015 WL 6680807 (C.D. Cal. Oct. 19, 2015)).   Because consumers have already associated Landgraf's products with Starbucks' Marks, the Court finds that the likelihood of confusion factor weighs in favor of Starbucks.

Fifth, the marketing channels factor weighs in Starbucks' favor because both Starbucks' products and the Dabuccino line are promoted on the internet.  (Compl. ¶ 14, 26, 38.)  Sixth, the type of goods and degree of care element weighs slightly in favor of Starbucks as well, since the Dabuccino products at issue are t-shirts, pins, and other novelties, all products that Starbucks offers.   Because these products are generally smaller and less valuable than other items, it is possible that buyers will not scrutinize them as closely as they would other, larger, products.   Seventh, Landgraf has demonstrated a clear intent to infringe on Starbucks' Marks.   Promotion of the Dabuccino products expressly sought to link the infringing products with Starbucks' Marks.   (*Id.* ¶ 38.)   The Dabuccino products even included a "Certificate of Authenticity" featuring the infringing logos.  (*Id.* ¶ 39.)  Given that virtually all[3] of the *Sleekcraft* elements weigh in Starbucks' favor, the Court finds that Starbucks has sufficiently pled a meritorious claim for trademark infringement.[4]

### 3.    The Amount at Stake Weighs in Favor of Default Judgment

The fourth *Eitel* factor balances the sum of money at stake with the "seriousness of the action."  *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–

---

[3] While it is unclear whether the likelihood of expansion factor is satisfied, it is not necessary for Starbucks to establish every *Sleekcraft* element in its favor.

[4] Because Starbucks can establish the merits of its trademark infringement claim, it need not go through a separate analysis for the false designation claim as the two analyses are effectively identical.  *See Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir.1999) (noting that infringement and false designation of origin claims are effectively identical, except that false designation of origin claims protect both registered and unregistered trademarks and can protect a wider range of practices, such as false advertising); *Truong Giant Corp v. Twinstar Tea Corp.*, No. C 06–035494 JSW, 2007 WL 1545173, at *4 (N.D.Cal. May 29, 2007).

CW (MEJ), 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations and quotations omitted). The amount at stake must not be disproportionate to the harm alleged. *Id.* Default judgments are disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

The Court finds the damages requested by Starbucks are reasonable. To begin, statutory damages "are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). Statutory damages are appropriate here because Starbucks cannot fully ascertain its actual damages as Landgraf has failed to cooperate or file an answer in these proceedings. Starbucks' request for statutory damages falls within the parameters set forth in the Copyright Act, allowing recovery up to $150,000 per willful infringement. 17 U.S.C. § 504(c). Starbucks alleges that two of its copyrights were infringed; thus its $300,000 request represents the maximum amount that may be recovered under the Copyright Act. *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) ("[S]tatutory damages are to be calculated according to the number of works infringed, not the number of infringements."). Given that copyright infringement awards can range into the millions of dollars, the Court finds that Starbucks' $300,000 request is reasonable. *See Sream*, 2016 WL 4967710, at *2 (finding that a plaintiff's request for $300,000 in damages was not too large or unreasonable to grant a default judgment); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (entering default judgment when plaintiff requested $1,023,157.27 in damages).

Starbucks' request for compensatory damages under the Lanham Act is also reasonable, as it seeks $99,000 in actual damages, the same amount of profit that Landgraf received from co-defendant Hitman Glass to create the infringing products.

(*See* Gold Decl. ¶ 9.)  Finally, Starbucks' request for attorney's fees under the Lanham Act and the Copyright Act, calculated pursuant to the schedule set forth in Rule 55-3, is also reasonable.  15 U.S.C. § 1117(a); 17 U.S.C. § 505; Cal. C.D. Civ. L.R. 55-3.  Given that all of Starbucks' requests for damages fit squarely within the statutory schemes of the Lanham and Copyright Acts, the Court finds that the fourth *Eitel* weighs in favor of default judgment.

**4.      There is Little Possibility of Dispute as to Material Facts**

The next *Eitel* factor considers the possibility that material facts are disputed.  *PepsiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471–72; *see Auto. Indus. Pension Trust Fund v. Bi-City Paint & Body Co.*, No. C 12–01972 LB, 2012 WL 6799735, at *5 (N.D. Cal. Dec. 6, 2012) ("Given that the issues are easily ascertainable, the possibility for substantial fact disputes seems unlikely").  The Court finds there is little possibility of a dispute arising as to the material facts in this case for two reasons.  First, based on the images of the infringing work provided by Starbucks, a dispute over the design appears unlikely given the strong similarities between Starbucks' Marks and the Dabuccino logos.  (Compl. ¶ 33.)  Second, given that Starbucks' Marks are ubiquitous in the United States and the infringing Dabuccino products were specifically marketed using the statement "[t]aking inspiration from one of America's favorite frozen coffee drinks, this cup is hugely popular with most people and easily relatable," Landgraf obviously had access to Starbucks' Marks and intended to infringe upon them.  (*Id.* ¶ 21–29, 38)  As such, the Court finds that this factor weighs in favor of default judgment.

**5.      There is Little Possibility That Default was Due to Excusable Neglect**

Landgraf's default does not appear to be the result of excusable neglect.  There is little possibility of excusable neglect when the defendant fails to respond after being properly served.  *See Wecosign*, 845 F. Supp. 2d at 1082.  Here, Landgraf was properly served with the Complaint on August 1, 2016.  (Gold Decl. ¶ 2.)  Even after service, Landgraf failed to respond or appear before this Court.  Accordingly, the

1    Court finds the sixth *Eitel* factor favors entry of a default judgment.

2        **6.    Decision on the Merits**

3        In *Eitel*, the court maintained that "[c]ases should be decided upon their merits

4    whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, where, as here, a

5    defendant fails to answer the plaintiff's complaint, "a decision on the merits [is]

6    impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.  Because Landgraf

7    failed to respond to Starbucks' Complaint, the Court finds that the seventh *Eitel* factor

8    favors entry of default judgment.  After reviewing Starbucks' motion in light of the

9    *Eitel* factors, the Court finds an entry of default judgment appropriate.  The Court now

10   turns to Starbucks' requested relief.

11   **C.   Remedies**

12       Starbucks requests permanent injunctive relief, statutory damages under the

13   Copyright Act in the amount of $300,000, compensatory damages under the Lanham

14   Act in the amount of $99,000, and attorneys' fees.  The Court addresses each request

15   in turn.

16       **1.    Injunctive Relief**

17       Starbucks' first seeks permanent injunctive relief against Landgraf under both

18   the Lanham Act and the Copyright Act.  (Compl. Prayer for Relief ¶ 2, 3.); *see* 15

19   U.S.C. § 1116(a); 17 U.S.C. § 502(a).  Permanent injunctive relief is available as part

20   of a default judgment. *See Philip Morris*, 219 F.R.D. at 502.

21       Under the Lanham Act, Starbucks seeks a permanent injunction that would bar

22   Landgraf from "making, using, selling, offering to sell, importing into these United

23   States, displaying, advertising any product or service bearing or utilizing in any way

24   the Starbucks Marks, including but not limited to (i) using any of the Starbucks'

25   registered and common law trademarks in any way that dilutes or is likely to dilute

26   any of the Starbucks Marks; (ii) using any of Starbucks' registered and common law

27   trademarks including the Starbucks Marks in connection with the operation of

28   Defendants' businesses, promotional offers, advertising, marketing, or on Defendants'

1   products; (iii) using any trademark, logo, words, or design that tends to falsely

2   represent or is likely to confuse, mislead, or deceive consumers, purchasers,

3   Defendants' customers, prospective customers or any member of the public that

4   Defendants' promotions, advertisements, products, or services originate from

5   Starbucks or have been sponsored, approved, or licensed by, or are otherwise

6   associated with Starbucks or are in any way connected or affiliated with Starbucks;

7   and (iv) selling or distributing any of the merchandise in the Dabuccino product line."

8   (Compl. Prayer for Relief ¶ 2.)

9        Under the Lanham Act, "the district court [has] the 'power to grant injunctions

10  according to principles of equity and upon such terms as the court may deem

11  reasonable, to prevent the violation of any right of the trademark owner." *Reno Air*

12  *Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir.2006) (citing 15 U.S.C. §

13  1116(a)). In fact, "[i]njunctive relief is the remedy of choice for trademark and unfair

14  competition cases, since there is no adequate remedy at law for the injury caused by a

15  defendant's continuing infringement." *Century 21*, 846 F.2d at 1180. In order for the

16  Court to grant a permanent injunction, Starbucks must show: "(1) that it has suffered

17  an irreparable injury; (2) that remedies available at law, such as monetary damages,

18  are inadequate to compensate for that injury; (3) that, considering the balance of

19  hardships between the plaintiff and defendant, a remedy in equity is warranted; and

20  (4) that the public interest would not be disserved by a permanent injunction." *eBay*

21  *Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

22       Starbucks has not demonstrated that it has suffered irreparable injury. The

23  Ninth Circuit has held that "actual irreparable harm must be demonstrated to obtain a

24  permanent injunction in a trademark infringement action." *Herb Reed Enterprises,*

25  *LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). Here,

26  Starbucks argues that it has suffered irreparable harm because it faces the threat of a

27  "loss of prospective customers, goodwill, [and] reputation" due to Landgraf's

28  infringement. (Mot. at 19–20.) Nonetheless, Starbucks has failed to show how any of

1    these harms have actually transpired as a result of Landgraf's actions.  Instead, it notes

2    that some consumers have drawn an association between the Dabuccino products and

3    Starbucks' Marks on social media.   (Compl. ¶ 38–39.)   When combined with

4    Starbucks' lack of analysis on how the remedies available at law are inadequate to

5    compensate for its alleged injuries, Starbucks has not established the necessary

6    elements to receive a permanent injunction under the Lanham Act.

7        Starbucks also requests a permanent injunction under the Copyright Act that

8    would bar Landgraf "from reproducing, making derivative works of, distributing, or

9    displaying the materials protected by the Starbucks Copyrights or any substantially

10   similar materials including those materials comprising the Dabuccino product line."

11   (Compl. Prayer for Relief ¶ 3.); 17 U.S.C. § 502(a).  The Court also declines to grant

12   Plaintiff this requested injunction under the Copyright Act, finding that the damages at

13   law in this case, of over $400,000, are sufficient to deter Landgraf's future

14   infringement of Starbucks' Marks.

15        **2.      Statutory Damages Under the Copyright Act**

16        Starbucks also seeks $300,000 in statutory damages under the Copyright Act.

17   (Mot. at 23.)   The Copyright Act allows a copyright owner to pursue statutory

18   damages in lieu of actual damages any time before final judgment is rendered.   17

19   U.S.C. § 504(c)(1).  When a plaintiff shows that a defendant willfully infringed its

20   copyright, it may be awarded up to $150,000 per copyright violated.  *Id*.; *see Sweet*

21   *People Apparel, Inc. v. Zipper Clothing*, No. CV 12–02759–ODW (CWx), 2012 WL

22   1952842, at *5 (C.D. Cal. May 31, 2012).  Courts "frequently infer willfulness where

23   a defendant defaults."  *Id.* (citing to *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528

24   F.3d 696, 702 (9th Cir.2008) ("All factual allegations in the complaint are deemed

25   true, including the allegation of [defendants'] willful infringement . . . ")); *Autodesk,*

26   *Inc. v. Flores*, No. 10–CV–01917–LHK, 2011 WL 337836, at *8 (N.D. Cal. Jan 31,

27   2011) (slip copy) ("Willfulness may also be inferred or admitted based on a

28   defendant's failure to defend").  Given Landgraf's failure to respond in the case and

his explicit acknowledgment that his products are substantially similar or at least closely related to products featuring Starbucks' Marks, his infringement was willful.

The Court "has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). When considering the amount of damages to award, the Court must look to the "nature of the copyright, the circumstances of the infringement and the like." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106–07 (1919)). Further, "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952).

Here, Starbucks requests $300,000, the statutory maximum for the willful infringements of two copyrights. The Court concludes that this amount is reasonable in light of Starbucks' inability to fully ascertain its exact damages and the preeminence of Starbucks' Marks.

### 3.     Compensatory Damages Under the Lanham Act

Starbucks also seeks $99,000 in compensatory damages under the Lanham Act. (Mot. at 23.) The Lanham Act allows for the recovery of a defendant's profits and the costs of prosecuting an action for willful violation of Section 1125(c). While a plaintiff must choose between recovering statutory damages and actual damages under either the Lanham Act and the Copyright Act, nothing prohibits a plaintiff from seeking statutory damages under one act and actual damages under the other, or vice versa. *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994).

As analyzed above, Landgraf's infringements were willful violations of Section 1125(c) of the Lanham Act. Landgraf received $99,000 from Hitman Glass for his work on the Dabuccino line. (Gold Decl., ¶ 9.) Therefore, Starbucks is entitled to

1   actual damages in the amount of $99,000 in order to recover the profits Landgraf
2   made from infringing on Starbucks' Marks.

3   **4.   Attorney's Fees**

4   Finally, Starbucks seeks attorneys' fees under both the Lanham Act and the
5   Copyright Act.  (Mot. at 24); 15 U.S.C. § 1117(a); 17 U.S.C. § 505.  When a party
6   seeks statutory attorneys' fees, the award is subject to the constraints outlined in Local
7   Rule 55-3.  If an applicable statute provides for the recovery of attorneys' fees and the
8   total monetary judgment in the case is over $100,000, the court must set attorneys'
9   fees at $5,600 plus 2% of the amount over $100,000 that is awarded.  C.D. Cal. R. 55-
10  3.  Because the applicable statutes of the Lanham Act and Copyright Act provide for
11  the recovery of attorney's fees, the Court will award such fees in accordance with the
12  Local Rules.  15 U.S.C. § 1117(a); 17 U.S.C. § 505.

13  Here, the total judgment against Landgraf exceeds $100,000, and thus the Court
14  will award Starbucks $5,600 plus 2% of the award over the $100,000 threshold.  The
15  initial award totals $399,000, after the statutory and actual damages are combined.
16  Therefore, the Court awards Starbucks $11,580 in attorneys' fees ($5,600 + $5,980).
17  *See Vogel*, 992 F.Supp.2d at 1016 (applying Rule 55-3 schedule to award fees in a
18  default judgment context).

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

# V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Starbucks' Motion for Default Judgment against Landgraf.   The Court **DENIES** Starbucks' request for permanent injunctions under both the Lanham and Copyright Acts, but **GRANTS** Starbucks' request for $410,580 in damages and attorneys' fees.   Upon entry of judgment, the Clerk of the Court shall close the case against Landgraf.

**IT IS SO ORDERED.**

October 20, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**